UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TORCHES ON THE HUDSON, LLC d/b/a
BLU POINTE; JOSCO INC,

               Plaintiff,

-against-

THE SENTINEL INSURANCE COMPANY,
LTD. and THE HARTFORD FINANCIAL
SERVICES GROUP, INC.,

               Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-07855 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Almost two years after COVID-19 first spread across the globe and brought society as we commonly knew it to a halt, the pandemic's impact continues to be felt everywhere—including in the world of insurance litigation. *See, e.g.*, *Metro. Dental Arts P.C. v. Hartford Fin. Servs. Grp., Inc.*, No 20-CV-02443, 2021 WL 5027536 (E.D.N.Y. Oct. 12, 2021); *Hudson Valley Bone & Joint Surgeons, LLP v. CNA Fin. Corp.*, No. 20-CV-06073, 2021 WL 4340987 (S.D.N.Y. Sept. 23, 2021); *WM Bang LLC v. Travelers Cas. Ins. Co.*, No. 20-CV-04540, 2021 WL 4150844 (S.D.N.Y. Sept. 13, 2021); *Elite Union Installations, LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20-CV-04761, 2021 WL 4155016 (S.D.N.Y. Sept. 13, 2021); *Broadway 104, LLC v. XL Ins. Am., Inc.*, No. 20-CV-03813, 2021 WL 2581240 (S.D.N.Y. June 23, 2021); *Office Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20-CV-04736, 2021 WL 2403088 (S.D.N.Y. June 11, 2021); *see also Abbey Hotel Acquisition, LLC v. Nat'l Sur. Corp.*, No. 21-CV-03506, 2021 WL 4522950, at *1 n.2 (S.D.N.Y. Oct. 1, 2021) (applying Florida law but observing that "there is no conflict between New York and Florida law"). This particular Memorandum Opinion and Order addresses a COVID-19-related insurance dispute between Torches on the Hudson, LLC d/b/a Blu Pointe; Josco Inc. ("Plaintiff") and Sentinel Insurance Company, Ltd. ("Defendant").

In short, Plaintiff sues for breach of a property insurance agreement, Policy No. 13 SBA AA3891 ("Policy"), that it purchased from Defendant for a term beginning on June 2, 2019 and ending on June 2, 2020. (*See* Doc. 10, "FAC" ¶¶ 14, 127-41).[1]

Defendant served Plaintiff with its motion to dismiss the First Amended Complaint ("FAC"), the operative pleading, on March 24, 2021. (*See* Doc. 23; Doc. 24, "Def. Br."). Plaintiff served its opposition thereto on April 21, 2021 (Doc. 26, "Opp. Br."),[2] and the motion was briefed fully with service of Defendant's reply memorandum of law on May 12, 2021 (Doc. 28).

For the reasons set forth below, the motion to dismiss is GRANTED.[3]

## BACKGROUND

Plaintiff has owned and operated a fine dining restaurant in Newburgh, New York, since 2013. (FAC ¶¶ 4, 67-68). As COVID-19 spread in March 2020, the restaurant was impacted by a variety of Executive Orders issued by then-Governor Andrew M. Cuomo, which limited Plaintiff's ability to serve patrons on site. (*Id.* ¶¶ 26-30). "These Orders," as characterized by Plaintiff, "were intended to protect people and property from imminent substantial harm and avoid the occurrence in the state of New York of a pandemic disaster," and "were issued pursuant to the Executives' inherent emergency powers to deal with disasters . . . . They were not the result of the . . . process typical of laws and regulations." (*Id.* ¶¶ 32-33). Plaintiff maintains that it complied with all Executive Orders and that COVID-19 was present on its property. (*Id.* ¶¶ 34, 60).

---

[1] Plaintiff initially pressed two claims for relief—one for breach of contract and one for breach of the implied covenant of good faith and fair dealing—and proceeded against Defendant and The Hartford Financial Services Group, Inc. ("Hartford"). (*See generally* FAC). By Stipulation signed by the parties and "So Ordered" by the Court on March 15, 2021, both Hartford and the claim for breach of the implied covenant of good faith and fair dealing were dismissed from this action. (Doc. 22).

[2] Plaintiff's memorandum of law in opposition to the motion was filed twice. (*See* Opp. Br.; Doc. 27). As there are no differences between the documents, the Court cites to the first document filed.

[3] Defendant also filed, on May 12, 2021, a letter requesting oral argument on the motion to dismiss. (Doc. 29). Given the conclusions reached herein, that request is denied as moot.

The problem with cooperating with the Executive Orders and countering the presence of COVID-19, from Plaintiff's perspective, is that its business model—fine dining along the Hudson River—could not operate profitably on takeout services alone. (*Id.* ¶¶ 60, 67-69, 71). Indeed, Plaintiff avers that the majority of its "revenue derives from . . . on-premises dining and table service." (*Id.* ¶ 70). Despite its preference to offer a fine dining experience on site, the Executive Orders required that Plaintiff "slow down," cancel approximately sixty-five events, and provide only takeout services until June 23, 2020. (*Id.* ¶¶ 73-79). Plaintiff, consequently, has lost "$1.7 million in revenue since March 16, 2020." (*Id.* ¶¶ 81-82).

Having suffered these losses, Plaintiff made a claim under the Policy. (*Id.* ¶ 98). Defendant, on or about April 21, 2020, denied Plaintiff's claim. (*Id.*). Plaintiff believes that Defendant's denial of the claim constitutes a breach of contract. (*See generally id.* ¶¶ 99-108, 127-41).

This suit followed.

## STANDARD OF REVIEW

I. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

3

has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II. <u>Documents Considered</u>

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the

4

document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) (internal quotation marks omitted).

Here, the FAC has two attachments. The first attachment, Exhibit 1, is a copy of the Policy. (FAC at 27-202, "Ex. 1"). The second attachment, Exhibit 2, is a copy of an April 21, 2020 letter from Defendant denying Plaintiff's claim for coverage under the Policy. (*Id*. at 203-08, "Ex. 2"). As the documents were annexed to the FAC and are integral thereto, the Court properly considers them at this stage.[4] *Schafer*, 845 F. App'x at 82 n.5.

## ANALYSIS

I. Choice of Law and Principles of New York Contract Interpretation

Initially, the Court must first determine which law governs the Policy and its interpretation. As the Policy is silent on this issue, and "[t]he parties apply New York law in their moving papers," *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 486 n.1 (S.D.N.Y. 2020), the Court applies New York law.[5]

The Policy—like any agreement governed by New York law—is "interpreted according to general rules of contract interpretation. Courts must give effect to the intent of the parties as expressed in the clear language of their contract. The insured party bears the burden of showing that the insurance contract covers the loss." *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 524 F. Supp. 3d 242, 245 (S.D.N.Y. 2021) (internal citations and quotation marks omitted); *see also Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 239 F.

---

[4] Citations to Exhibit 1 correspond to the Bates Numbers stamped onto the document by Plaintiff; citations to Exhibit 2 correspond to the pagination generated by ECF.

[5] Separately, the Court concludes that New York law applies because the Policy concerns insurance for "a New York-based entity" and "covers property in New York." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2014); *see also* N.Y. Ins. Law § 3103(b) (directing that no property insurance policy "shall provide that the rights or obligations of the insured . . . shall be governed by the laws of any jurisdiction other than this state").

Supp. 3d 761, 784 (S.D.N.Y. 2017) (explaining that if an insurance contract's terms are "clear and unambiguous," they are "understood in their plain, ordinary and proper sense" (internal quotation marks omitted)). "The initial interpretation of the contract and whether its terms are ambiguous are questions of law for the Court to decide." *Food for Thought Caterers Corp.*, 524 F. Supp. 3d at 246 (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). "[T]erms are unambiguous where they provide 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012)).

II.   The Policy

Plaintiff's business generally remained open—albeit less profitably and at reduced levels—throughout 2020. The question, then, is whether a reduction in profitability triggers coverage under any of the provisions identified by Plaintiff. The Court concludes that it does not do so.[6]

    A.   Business Income and Extra Expense Coverage

The first coverage Plaintiff identifies, "Business Income and Extra Expense Coverage," is set forth in two separate provisions in the Policy. (*See* FAC ¶¶ 112-17; Ex. 1 at POLICY047).

The Policy provides as a general proposition that Defendant:

> will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss.

---

[6] The Courts notes that "the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss." *Food for Thought Caterers Corp.*, 524 F. Supp. 3d at 247. This includes, as noted in Defendant's September 24, 2021 letter, three decisions on motions to dismiss rendered in the last year by this Court from the bench. (Doc. 30). The Court is not aware of, and Plaintiff has not advised of, any cases applying New York law that concluded otherwise.

(Ex. 1 at POLICY038). Bearing this principle in mind, Section A.5.o. outlines the parameters of Business Income Coverage. That clause explains that Defendant

> will pay for the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary suspension of [Plaintiff's] "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

(*Id*. at POLICY047). As for Extra Expense Coverage, Section A.5.p. explains that Defendant:

> will pay reasonable and necessary Extra Expense [Plaintiff] incur[s] during the "period of restoration" that [Plaintiff] would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

(*Id*.). "Covered Cause of Loss" is, in turn, defined as "RISKS OF DIRECT PHYSICAL LOSS," subject to certain limitations and exclusions. (*Id*. at POLICY039).

Plaintiff's theories of coverage, with respect to these provisions, are that: (1) "actual on-site COVID-19 contamination" qualifies under the insurance contract; (2) the actions it took "to preserve property and persons from an imminent risk of harm" fall under these coverages; and (3) the prospect "of imminent harm" posed by COVID-19 "is itself a covered cause of loss." (FAC ¶¶ 85(i)-(iii); *see also id*. ¶¶ 60, 63-64). In light of applicable New York State precedent, specifically *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4 (App. Div. 2002), the Court must—like numerous courts before it—reject these arguments.

The Appellate Division, First Department, in *Roundabout Theatre*, held that the plaintiff, a theatre company, "was not entitled to coverage because physical damage to the theatre did not cause it to suspend its business operations, and the policy 'clearly and unambiguously provide[d] coverage only where the insured's property suffer[ed] direct physical damage.'" *Food for Thought Caterers Corp.*, 524 F. Supp. 3d at 247 (quoting *Roundabout Theatre*, 751 N.Y.S. 2d at 8 (alterations in original)). Since *Roundabout Theatre* was decided, "courts applying New York law

7

have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage when the policy provides that such coverage requires evidence of physical damage or physical loss." *Id.*; *10012 Holdings, Inc.*, 507 F. Supp. 3d at 486-87 ("New York courts interpreting substantially identical language -- 'loss of, damage to, or destruction of property or facilities' -- have found it limited to losses involving *physical damage to the insured's property*." (emphasis in original)); *see also United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 133 (2d Cir. 2006); *Metro. Dental Arts P.C.*, 2021 WL 5027536, at *3 ("This Court agrees with the holding in *10012 Holdings* and the many other cases that reached the same conclusion. Plaintiff's business property insurance policy requires some form of 'direct physical loss of or physical damage' to the insured premises to trigger loss of business income coverage."); *Newman Myers Kreines Gross Harris, P.C.*, 17 F. Supp. 3d at 331; *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175-82 (S.D.N.Y. 2020); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, No. 20-CV-07132, 2021 WL 1600475, at *2-3 (S.D.N.Y. Apr. 23, 2021).

Although Plaintiff attempts to differentiate the policy language and facts underlying *Roundabout Theatre* from those extant here, its effort is unavailing. Indeed, Judge Schofield, in considering the same language in a different COVID-19 insurance case, found the language "substantially identical" to that addressed by the Appellate Division in *Roundabout Theatre*. *10012 Holdings, Inc.*, 507 F. Supp. 3d at 486-87. What's more, courts in the Southern District have routinely applied *Roundabout Theatre* in adjudicating disputes arising from insurance agreements—and specifically in the context of COVID-19 business interruption. *See, e.g.*, *Spirit Realty Capital, Inc. v. Westport Ins. Corp.*, No. 21-CV-02261, 2021 WL 4926016, at *2 (S.D.N.Y. Oct. 21, 2021); *Northwell Health, Inc. v. Lexington Ins. Co.*, No. 21-CV-01104, 2021 WL

8

3139991, at *6 (S.D.N.Y. July 26, 2021); *Broadway 104, LLC*, 2021 WL 2581240, at *3. Plaintiff simply offers no convincing reason to reject these holdings.

Plaintiff also argued in its opposition that "[t]he presence of COVID-19 on Plaintiff's property constitute[d] property damage . . . ." (Opp. Br. at 17). Assuming that Plaintiff's business was contaminated by COVID-19, "[w]here courts interpreted Business Income provisions to require evidence of physical damage, as required under New York law, alleging the presence of the virus at the insured's premises was inadequate to survive a motion to dismiss on this type of insurance claim." *Food for Thought Caterers Corp.*, 524 F. Supp. 3d at 249. In fact, Judge Koeltl has explained that "contamination of the premises by a virus does not constitute a 'direct physical loss' because the virus's presence can be eliminated by 'routine cleaning and disinfecting,' and 'an item or structure that merely needs to be cleaned has not suffered' a direct physical loss." *Id*. (quoting *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-00754, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020)); *see also Spirit Realty Capital, Inc.*, 2021 WL 4926016, at *3 ("The Court is unpersuaded. First, the overwhelming weight of precedent, both from lower New York courts and district courts in this Circuit, holds that COVID-19 does not qualify as 'physical loss or damage.'" (collecting cases)).

The Court rejects Plaintiff's arguments regarding the Business Interruption or Extra Expense Coverages. Accordingly, Plaintiff has failed to allege plausibly "direct physical loss of or physical damage to" its property caused by COVID-19 that would trigger either of these two coverages. (*See also* Ex. 2 at 204 (concluding, *inter alia*, that "since the coronavirus did not cause property damage at [Plaintiff's] place of business . . . this loss is not covered")). Any claim stemming from these coverage provisions is, consequently, dismissed.

B.  Civil Authority Coverage

Plaintiff's third coverage theory concerns situations where a business loses income by operation of governmental directives. (*See* FAC ¶¶ 118-20). The provision explaining coverage for Civil Authority Orders, Section A.5.q., states that:

> [t]his insurance is extended to apply to the actual loss of Business Income [Plaintiff] sustain[s] when access to [Plaintiff's] "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [Plaintiff's] "scheduled premises".

(Ex. 1 at POLICY048). Plaintiff's theories with respect to the Civil Authority Coverage are that the Executive Orders meet the parameters of this provision because they: (1) rendered Plaintiff's business "uninhabitable and unusable on premises and in other forms;" and (2) were issued "pursuant to inherent authorities to act in a disaster regardless of the actual presence of COVID-19 virus on-site." (FAC ¶¶ 85(iv)-(v); *see also id*. ¶¶ 61-62, 65). The Court rejects these contractual theories as well.

The coverage secured in this provision is, by its very terms, limited to situations where Plaintiff incurs losses *because* a government specifically prohibited access to Plaintiff's property as a direct result of physical loss or damage to property "in the immediate area" around Plaintiff's property. That is simply not the case here. First, Plaintiff does not allege plausibly that any specific Executive Order "prohibit[ed]" access to its property. At best, Plaintiff complains that Executive Orders curtailed its preferred business model. (*See* FAC ¶¶ 26-30). While this may well be the case, "[t]his workforce reduction requirement simply does not amount to denial of access to the property. Unlike a situation, for example, of an unsafe condition at an adjoining building requiring a safety evacuation of a covered property, the owner of the property could continue to access the property despite the total reduction in the workforce." *Food for Thought Caterers Corp.*, 524 F. Supp. 3d at 250. Second, even if that were not the case, the Executive Orders were not the result

10

of "direct physical loss of or damage to" any property. As Judge Kuntz observed when considering the same language in a different case approximately one month ago:

> "[N]othing about New York's shutdown orders enable [Plaintiff] to satisfy the express requirements of the Civil Authority provision. [Plaintiff] cannot plausibly plead that the shutdown orders (1) prohibited 'access to' its premises; or (2) were 'the direct result of a risk of direct physical loss to property in the immediate area.'"

*Metro. Dental Arts P.C.*, 2021 WL 5027536, at *3 (quoting *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-03350, 2021 WL 1034259, at *13 (S.D.N.Y. Mar. 18, 2021) (alterations in original)); (*see also* Ex. 2 at 204 (concluding, *inter alia*, that "since the coronavirus did not cause property damage . . . in the immediate area, this loss is not covered")).

Any claim based upon the Civil Authority Coverage is, accordingly, dismissed.

### C. Extended Business Income Coverage

The final coverage under which Plaintiff insists its losses fall is the Extended Business Income Coverage outlined in Section A.5.r. (*See* FAC ¶¶ 121-2). That section states, in pertinent part, that when:

> the necessary suspension of [Plaintiff's] "operations" produces a Business Income loss payable under this policy, [Defendant] will pay for the actual loss of Business Income [Plaintiff] incur[s] during that period.

(Ex. 1 at POLICY048). Plaintiff has not alleged the existence of a loss payable under the Business Income Coverage, so it cannot state a claim for Extended Business Income Coverage. *See Poughkeepsie Waterfront Dev., LLC v. Travelers Indem. Co. of Am.*, No. 20-CV-04890, 2021 WL 4392304, at *1 n.2 (S.D.N.Y. Sept. 24, 2021). Any liability grounded on this coverage is, therefore, dismissed.

D.  Miscellaneous Coverage Provisions

Plaintiff, taking a blunderbuss approach at the end of the FAC, claimed in conclusory fashion that four other coverages might apply. (*See* FAC ¶ 123). Defendant moved to dismiss any breach of contract claim based on those coverages, and Plaintiff failed to respond to those arguments. (*Compare* Def. Br. at 22-23, *with* Opp. Br.). These theories are, therefore, deemed abandoned and are dismissed on that basis. *See, e.g.*, *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (explaining that where a plaintiff fails to respond to a defendant's argument on a motion to dismiss, the point is conceded); *see also Felske v. Hirschmann*, No. 10-CV-08899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

However, even if the theories were not deemed abandoned, the Court would nevertheless conclude that the provisions are inapplicable here.

The first, Expediting Expenses Coverage, "appl[ies] only to direct physical loss or physical damage caused by or resulting from an Equipment Breakdown Accident . . . ." (Ex. 1 at POLICY041). Plaintiff makes no allegations supporting the existence of an "Equipment Breakdown Accident." (*See generally* FAC; *see also* Ex. 1 at POLICY041 (defining the phrase to mean, *inter alia*, a mechanical breakdown). The second, Business Income from Dependent Properties, requires that Defendant reimburse Plaintiff "for the actual loss of Business Income [Plaintiff] sustain[s] due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss." (Ex. 1 at POLICY048). Aside from failing to plead a Covered Cause of Loss, Plaintiff also fails to identify any "dependent property" in the FAC. (*See generally* FAC). The third, Claim Expenses Coverage, is triggered when Plaintiff incurs expenses—at Defendant's "specific request"—in connection with

investigation of a claim or determining the amount of loss. (Ex. 1 at POLICY145). Plaintiff has not identified any such "specific request." (*See generally* FAC). The final coverage, Super Stretch for Business Services, is not a specific grant of coverage, but rather, the title of an endorsement—with a variety of subsections—modifying the Policy. (Ex. 1 at POLICY144-150). None of these theories could withstand Defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 23 and Doc. 29 and close this case.

SO ORDERED:

Dated: White Plains, New York
November 18, 2021

_____
PHILIP M. HALPERN
United States District Judge